28 C.C.P.A.(Patents)

### In re FORSS.
### Patent Appeal No. 4416.

Court of Customs and Patent Appeals.

Feb. 3, 1941.

Eugene C. Wann, of Milwaukee, Wis. (Charles J. Diller, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting, for want of patentability over the cited prior art, claims 1 and 2 of appellant's application. No claims were allowed.

Claim 1 is illustrative, and reads as follows: "1. A remote control for a portable motor operated high frequency electric tool comprising in combination with said tool, a high voltage circuit connected to the tool motor, a switch in said circuit at a point remote from the tool, a low voltage circuit having a switch therein at the tool, a step-down transformer between said circuits, and a solenoid energized by the low voltage current on closing the low voltage switch at the tool to close the high voltage switch for operating the tool."

But one reference was cited, viz.: Sawyer, 2,022,155, November 26, 1935.

The subject matter of appellant's application is concisely described by the examiner in his statement as follows: "This application relates to an arrangement for controlling portable electric tools and the like, in which the power circuit is controlled by a contactor at a distance from the tool. The contactor operating coil is energized from a stepdown transformer adjacent thereto, through a control circuit extending to a control switch on the tool. By this arrangement, as pointed out by applicant, the relatively high voltage circuits may be protected by unbroken high strength insulation to and within the tool motor and the only circuits more or less exposed to accumulated dust or moisture which might produce shock hazard are relatively harmless low voltage circuits. Also the comparatively bulky power switch is not mounted on the tool and only a small control switch need be mounted on the tool."

The patent to Sawyer discloses an arrangement very similar to that disclosed by appellant, except that Sawyer's control circuit is energized by the same voltage as is supplied to the tool motor.

The Board of Appeals in its decision affirming the decision of the examiner stated:

"The examiner has held that if it is desired to avoid the disadvantages of the high voltage control circuit of the patent, it would be obvious to an ordinary mechanic to include a suitable step-down transformer in the switch casing of the reference connected in an obvious manner to energize the control circuit. The examiner points out that it is common practice, as in ordinary doorbell and furnace control systems, to energize control circuits by means of step-down transformers to minimize the danger of shock, etc.

"Appellant argues that low voltage doorbell and furnace control circuits are not used to control switches in high voltage circuits, but that the reason for using a low voltage circuit in a doorbell or furnace control system is to avoid the necessity of using rigid metal or flexible metal pipes or tubing to carry the wires.

"It is believed that the examiner's position that these are step-down transformers to minimize the danger of shock is a correct one and while there may be such reasons as applicant points out, it is our view that it would not amount to invention to incorporate such a mechanism into the organization of the Sawyer patent."

We are not in agreement with appellant's view that the well-known low voltage doorbell and furnace control circuits would not suggest to one skilled in the art that to avoid shock at the control switch of Sawyer a step-down transformer be employed and connected in the obvious manner to reduce the voltage of the control circuit.

To energize either a door-bell circuit or a control circuit for furnaces it is obvious that the full voltage of the power circuit is unnecessary, and therefore the voltage is reduced by well-known means to a point which, while ample for the operation of these circuits, is also relatively free of hazards of various kinds, such as might result from short circuits or arcing, incident to the use of relatively higher voltages; and by using such reduced voltage the necessity of expensive insulation is also avoided.

If, as appellant contends, the hazard of shock is still present in tools constructed in the manner taught by Sawyer, by reason of the high voltage of the control circuit, one skilled in the art would know that such

high voltage was wholly unnecessary, the only purpose of the control circuit being to operate the power switch, and it seems to us that it would readily occur to him that danger of shock from that source could be avoided by reducing the voltage in the control circuit by means which, as above stated are well-known.

It seems to us that, in view of the recognized state of the art, it would never occur to a skilled mechanic that to avoid shock he must reduce the voltage of the power circuit as well as the voltage of the control circuit, as appellant suggests; but he would know that the voltage of the control circuit was higher than was necessary to operate the power circuit switch, and hence would, without any exercise of the inventive faculty, reduce the voltage in the control circuit in the same manner as is disclosed in appellant's application.

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

Affirmed.